Good morning. If you could each tell us who you are and who you represent. I am Brian Williams of Meckler-Bolger-Telson-Macon-Pearson on behalf of the appellants and plaintiffs. Good morning, Justices. My name is Stephen Hamilton of McGuire Woods and I represent Harmony Health Plan of Illinois, Inc. Okay, just a couple housekeeping items. The microphones here are for recording purposes, not amplification, so keep your voice up. And we usually go 15 minutes per side, so save some time for rebuttal if you need it. If we unduly harass you, we might be a little relaxed about that. Okay? If we duly harass you, though, we won't get extra time. He's the duly harasser, I'm more unduly. I just try and keep them in their cages. Okay. Thank you very much. Please proceed. Good morning, Your Honors. As I said, I'm Brian Williams of Meckler-Bolger-Telson-Macon-Pearson. This is Bruce Meckler. We represent Chandra Khurana and Perfect Managed Care, who I may refer to as PMC. We're here today on an appeal of a trial court striking of a plaintiff's motion for a preliminary injunction. The trial court struck that motion without having a hearing on the substance of the motion. The court never reached the merits of the motion. It simply struck the motion for administrative reasons. We believe the court was incompetent. Can I ask about your conclusion that was in the brief, too, that it was for administrative reasons? In reading the court's comments, it seemed that the purpose that she tried to establish was that she found a change in circumstances. I know the quote that you're relying on to say administrative purposes, but isn't that a stretch? No, I don't think so, Your Honor. I think that, first of all, I think the change in circumstance was very vague in the court below. It was never really spelled out what that was. What do you actually seek here, though? When I look at this, do you expect them to go back and start over from the very beginning? I mean, isn't it really just a case of you should have a civil case against them? No, not go back to the very beginning. We want to go back and have a hearing on our motion for a preliminary injunction. And what purpose would that serve now? The purpose it would serve, Your Honor, and I believe the case law supports this, is that we could get an injunction that required termination of the contract only pursuant to the 90-day notice provision. That wasn't done here. But this was an immediate event. This is an event that they were entitled to immediate action for violation of both state and federal law. Well, that's in dispute, and we never got a chance to prove that, that that's not correct. We never got a chance in the court below to establish that. But an injunction can't go back retroactively and straighten us out. An injunction can be, even a mandatory injunction, can be used to keep a contract continued and in place. The purpose of the injunction is to maintain the status quo. The contract's gone. That's right, because it was improperly terminated. So your remedy is civil, not preliminary injunction. We have an injunction to try and keep that contract in place because they improperly terminated it. And if we get the right to have a hearing, we're going to be able to. So what I'm really thinking is your client is, you might say, liking to spend money to help you along. I'm not exactly sure what your Honor means. But we believe that if we go back and we get a chance to prove our case at the preliminary injunction stage, we'll show that the contract was not terminated properly and it should be kept in place. And that's one of the purposes that an injunction can serve, to keep a contract in place, to maintain the status quo. So they'd get the patients back? They could get the patients back. That's correct, Your Honor. They could get the patients back very simply in this case. Within days after this notice of termination came, Harmey was able to transfer 15,000 patients to different IPAs. They did so by sending out a letter saying, you're transferred. Mr. Williams, had this interlocutory appeal not gone forward, and had the stated intention of the trial judge been carried out, that is to bring the case to its conclusion through discovery and a trial to do it once that way, and had it been found that this was an improper termination and money damages assessed for that, wouldn't you already be in the position of having those patients back if your client was entitled to it? Well, the problem is, even if you find that there was a wrongful termination, all the patients are gone and that contract is gone. I don't think ultimately, it's been a year and a half, and we have not been able to get our patients back through other means. So if you wait until the very end, we're going to talk about two years of this going on, the damage to our reputation. But you already talked about in your brief several times over that in most cases, if not in many cases, I don't know, that the same doctors are treating the patients, and the only difference is that a different entity is facilitating the treatment of those patients by those same doctors. So I'm at a loss to understand how the ongoing relationship with those doctors is somehow in jeopardy if those doctors are continuing to treat the same patients. Dr. Khurana is not. Perfect Managed Care is not treating those patients. Well, was Dr. Khurana's, I mean, presumably she would keep her patients, right? Although, of course, she was ill for a long period of time, so she couldn't be treating any patients during that. Right, but her clinic could. But no, Dr. Khurana's patients didn't stay, because they were under the Managed Care Plan of Harmony, and Harmony said, no, now you're with different doctors. And they transferred them to, I shouldn't say different doctors, I should say different IPAs, and the doctors that worked with Dr. Khurana and many doctors are in multiple IPAs. So you can transfer patients to a doctor who's in a different IPA, but Dr. Khurana didn't get any of those patients. They were all taken from her. She didn't get any of them. And PMC didn't get any of them. But really her cause is for damages to her reputation. That's part of it. And that's part of it is that the loss of these patient relationships is the loss of the compensation that she was getting under the contract that she had from servicing those patients. She didn't have any ability with no notice. She had no chance to try and find a new contract to replace the one that they had with Harmony. So she was damaged in many ways, as was PMC. And we think that in order to have, for the court to effectively deny the motion for a preliminary injunction, the court should have at least heard it. When the TRO was held, the judge found that we had satisfied at least at that stage two of the. And you rely on that, Mr. Williams. And it seems to me that isn't that what the judge was referring to when she said that the circumstances have changed? I mean, that's not written in stone, those determinations at a temporary restraining order hearing where the standards are much different and it's more of a summary proceeding. And having become very familiar, I would think, with the procedural history and the nature of the dispute over a period of months, occasioned at least in part by your client's unfortunate illness, it seems to be implicit in your argument that the judge, having said that at the TRO, isn't free to make a determination and would be, indeed, as you have to argue, an abusive discretion for the judge to make a different determination months and months later, having learned more about the circumstances of the dispute. No, I understand, Your Honor, and I totally agree it's not written in stone. But from the time that decision was made until the motion for preliminary injunction was stricken, there was nothing really new in front of the court. Discovery was going on, but it hadn't been completed. And I don't think that, you know, what I interpreted the court saying that there had been a change in circumstance was perhaps that these patients had been transferred. But I don't think that that's actually a change in circumstances because, as was argued at the TRO, at the very beginning of the case, even at the time the determination took place, Harmony was already transferring these patients. But you weren't following up on the discovery. No. That kind of puts the judge in the middle. I mean, the time period that lapsed, and then to find out discovery hasn't taken place, and then the other side comes in on a motion to end it, and you don't pursue that. I mean, what is she supposed to do? I'm not sure what Your Honor means by we didn't pursue it. It said that even when they filed a motion in both briefs, it says nothing occurred. Well, when they filed a motion, we responded to it and we argued against it. Discovery was ongoing. And unfortunately, Dr. Carana was sick for a very long period of time, and she was hospitalized. She was oxygen dependent. We did the best we could with discovery. And there were all kinds of discovery objections going back and forth between both sides. And depositions didn't proceed because the discovery disputes hadn't been resolved. And we pushed to get those resolved. When they did get resolved, by then the court was, this motion was pending before the court to strike the preliminary injunction hearing. We fought that, and the judge disagreed with us. But the point that we're trying to make is the judge effectively decided this without hearing the merits of it. Can I ask you another question? Sure. An argument the counsel at the time made. It's on page A130 of your appendix, and it's on page 12 of the manuscript, where the lawyer for your client says her business has been destroyed. And I'm curious, given that argument, why a preliminary injunction would be a necessary cure as opposed to a suit for damages. Well, the preliminary injunction could serve a purpose to restore the business. One, it would restore her, if she would have the opportunity, or she would have had the opportunity to find a contract with another managed care provider. At the time of the termination, Dr. Carano and PMC were exclusively providing the Medicare services through Harmony. If they would have been given 90 days' notice, they would have had the opportunity, one, to tell their patients, look, in 90 days. But there's been a lot of water under the bridge since then. I mean, what we're talking about here is the irreparable harm. What you're saying in the record in front of the judge below is that, you know, the business has been ruined. And part of that is because there was a lot of delay up until that point in time, according to what you're saying. But then now you have all this time that you spent on appeal, and if the relief that you request here is denied, what's your next step? Well, we've been continuing in the lower court since the appeal was filed. And eventually the case is going to go to trial. But I don't think that the purpose of equitable relief, the very purpose of it, is that you can get relief before you have to wait for trial. And that's what we were denied, that opportunity to get that relief before having to wait all the way to trial. And as it stands right now, getting contracts is difficult because we have this accusation out there that we did all this wrongful conduct and the contract's been terminated. And that's a damage that is difficult to overcome, and it's immeasurable in terms of money damages. I'll speak for myself. I just don't see where the equitable relief is now that's going to do you any good. If we go back and we win, we get the contract reinstated. We have an opportunity then, and we know fully. Even if it's reinstated, even if you're right, within 90 days for no cause at all, it will be terminated. That's correct. That's correct, and we'll have 90 days' notice to confer with our patients and let them know there's going to be a change and to get a contract with another provider to provide services. And then those patients, those 15,000 patients that were taken from us, will have the opportunity to decide if they want Dr. Karana to keep treating them. What prevents you from doing that now? We have this hanging over our heads that we were terminated by wrongful conduct and that our reputations have been damaged and people are not willing or they're hesitant to contract with someone. If it's hanging over your head, you're the one that filed the appeal. You should be in seeking damages now for your reputation. That's what I think the three of us can't figure out, why you're here instead of there. We are in both places, Your Honor, and we have been pursuing the case in the trial court. In fact, we were in front of Judge Novak yesterday, and we are pursuing it here because we think we were wrongfully deprived of an opportunity to get injunctive relief. Now, let me just say that the other aspect of it that we haven't addressed yet is that given the opinion that the judge evidenced in her saying that the circumstances have changed in which she struck your preliminary injunction complaint without a hearing, that is a pretty crystal clear indication of how she would view the preliminary injunction because of those changed circumstances that she observed shouldn't have gone forward. Now, I understand you said we didn't get a chance to try to dissuade her on that, but under these circumstances where she was pretty fully apprised of what she thought changed the circumstances, and given the fact that this type of injunctive relief is something in which we bow to the discretion of the trial judge and you're dealing with the abuse of discretion standard on appeal, what makes you think that this would be anything other than a waste of everyone's time and money? Well, first, I think Mr. Meckler is a very good attorney. I know he's a very good attorney. I've had the pleasure to see him do wonderful work. Well, I actually think that discovery has been, we have done a lot of discovery, and I think the facts will show that we can meet the standards for it. And the only thing that we have really here, as I see the change in circumstances, I think that was a little bit of a red herring because, as I said, if the court was referring to the transfer of the patients, that was an issue at the time of the TRL. And if you're talking about the passage of time, that was not something that was in our control. And now you have another issue. You have the patients themselves who have to be considered, who almost outweigh any benefit or concern for your doctor because they're more important, plain and simple, because of the number of them. And you're dealing with a lot of older people that will only be confused and not know what's going on, and so you're creating a new issue by doing what you're doing. Well, I respectfully disagree, Your Honor. It's no different than what happened at the beginning of the case. Harmony simply sent out letters to all the patients, said, okay, now you're in this IPA. May I also raise the issue with some trepidation of the merits? Because given the nature of the report from the former employee, Jessica Leal, to the entity, which apparently for a period of years had been quite satisfied with the IPA that was run by your client, they seem to have taken, although I found out about it only in the response brief, they seem to have taken a number of steps to actually investigate and turn it over to potential law enforcement investigating authorities. So for a question of contract interpretation, does there need to be an indictment or indeed a conviction under the contract for the Harmony Health Plan to be entitled to do the immediate termination of the contract? Or does the nature of the report from a purported eyewitness that they do an initial investigation on and take it seriously enough to turn it over to state and federal investigating entities and bring in a former U.S. attorney to do an investigation, is that enough to trigger the entitlement to the immediate termination before there is a decision about whether to indict and whether to prosecute? Well, I think, first of all, the reporting was done pursuant to contract requirements of Harmony. Anytime they had suspected fraud, they had to report it. Federal government didn't take any action, except with regard to some allegations about a vaccine program. The state didn't take any action before there was any termination. The contract required Harmony to have reasonable discretion, and we don't think you can satisfy that standard without even discussing once, for one second, the people you're accusing of what happened. They have someone come in, a disgruntled employee, and say they were doing this, that, and the other thing. Not one phone call to PMC, not one discussion with Dr. Khurana, and they have these obligations to report what they may be suspected. They do that, and then they terminate before any ---- But part of what, you know, the flip side of that is part of your argument in the briefs is that there was a gap of time between the report and the automatic termination, which I read as the time in which they are doing an inquiry and an investigation. So you're really trying to have your cake and eat it, too, on that. On one hand, they wait, presumably to investigate, and you criticize them for the gap of time, and on the other hand, that investigation shows more than just hearing the words come out of the mouth of the former employee and then terminating it immediately. Well, I don't think that investigation showed anything more than what Leal accused PMC of. All right, but if that's the case, again, isn't that an issue for damages? That there was a wrongful termination of the contract. But this was something that is now a damage to reputation. We have an interest in continuing our relationship with our patients, and that's gone, and we can't get money damages to correct those things. Those things are immeasurable, and as the trial court found in the TRO, which I know is not written in stone, Your Honor, that there was irreparable harm, that we had made enough of a showing at that point. So I don't think that money damages is the answer, and that's why we're seeking this injunctive relief. Now, this investment — I won't hold you to that in case you go back down there and achieve money damages. Well, I think we're entitled to both, obviously, Your Honor. And I don't think that's unusual, having been in — Your Honor, can you say that again? I'm sorry? No. Okay. It was intramural. Okay. I mean, there are cases where you can get both money damages and injunctive relief. That's fairly common. So I just think that we've had an opportunity — we had an opportunity for this injunctive relief, and maybe the court would have denied it. I don't know. I think we could have prevailed. I think we were halfway there, and the court thought it was necessary at the time of the TRO to hold a preliminary injunction hearing to see if these other things could be satisfied. And I don't know what the changing circumstances were other than this passage of time, but that didn't stop the fact that we had this ongoing immediate damage that was destroying our business, that is destroying our business, that can't be remedied by money damages. So the fact that there was no legal impediment to having this, it wasn't a case where, you know, as we cited in our briefs, there was something that as a matter of law precluded injunctive relief. We think at a minimum we should have been able to have the opportunity to have a preliminary injunction hearing to present our case. And we think, and the judge is skipping over that for reasons of administrative reasons or judicial economy or whatever it may be, deprived of a right that we had, and we think that was an abuse of discretion, and we think the case should be reversed and remanded with instructions to hold that hearing. Thank you. Thank you. Good morning, Justices. Again, my name is Stephen Hamilton, and I, along with Ed Brooks and Lee Mensch, represent Harmony Health Plan of Illinois, Inc. You guys have all hit on the core issue here. This is a case for a breach of contract alleging improper termination, and the plaintiffs are seeking damages for that alleged breach. We've now closed discovery in the lower court, and next week we'll be setting, or I'm sorry, on the 19th we'll be setting a trial date most likely. So that's where we are right now. Now before I get into the points that counsel addressed, which I'll address them all, I want to kind of provide some background here as to why we're here and why a preliminary injunction, which, again, is one of the most drastic forms of relief and it's only appropriate in emergency circumstances, isn't appropriate, and why the trial court didn't abuse its discretion. Harmony is a Medicaid and Medicare organization, managed care organization, so it contracts with the state and federal governments to manage the health care and the delivery of health care for the elderly and indigent. As a state and federal contracted MCO, it's a steward of federal money, and it contracts with providers, such as primary care physicians, primary care doctors, and hospitals. It also contracts with entities like Perfect Managed Care, which is an independent practice association, or an IPA, that itself, those IPAs have networks of contracts. So what we have is a context of basically a contractual web between Harmony, the IPAs, and the providers themselves. Now, this case all arose, as you guys are aware, when a whistleblower, a former employee of Perfect Managed Care, came to Harmony unsolicited and said there's certain illegal conduct going on, including illegally soliciting patients, which gets Perfect Managed Care additional money from Harmony and then the state as well, and then also falsifying medical records and improperly using vaccines that are provided by the government free of charge. Mr. Hamilton, did our colloquies with your opposing counsel lead you to believe that we hadn't read the record? That I'm sorry, what? That we hadn't read the record. No, you make a great point, Justice Epstein. What I'm trying to do is just provide some background, and I'm happy to go on. But what plaintiffs then came and did is file the TRO and a preliminary injunction saying, Harmony, you improperly terminated for a cause, and don't, Judge Novak, don't accept that. Enter a TRO and a preliminary injunction flipping it and saying, Harmony, you have to terminate without cause and give 90 days' notice. So what they're really trying to do is reach the merits under the preliminary scheme. Judge Novak, of course, denied the TRO, and plaintiffs did not appeal that. If there was irreparable harm at that point, the plaintiffs should have come in on an interlocutory appeal, which would have been obviously very expedited, and appealed that TRO decision. So here we stand in the lower court, and we move to strike the preliminary injunction hearing after months passed. Now, the question obviously is, did the trial court abuse its discretion? You're not really suggesting that if a judge turns down a TRO, that that obviates the right under all circumstances to have a hearing on a preliminary injunction? Not under all circumstances, of course. What it is is a factor in terms of whether or not that goes to irreparable harm. And what they're claiming now is irreparable harm. If that was the case, they could have come in on the appeal of the TRO. I'm not saying, Karn Block, you have to appeal a TRO under no circumstances. Is that the case? So what we have here is the question of whether the judge abused its discretion. And the court really did two things. It did make a determination that proceeding on a PI hearing would be inefficient, and it would result in actual prejudice to the parties of duplicating discovery, duplicating the costs associated with discovery, and duplicating the costs associated with a TRO, I mean, I'm sorry, a preliminary injunction hearing, and then a hearing on the merits. So what the court said is it's more efficient because we are so far along in discovery to strike that. But what it also did, and the record's clear, the judge said, I am operating under the standards of a TRO, and I am finding that there aren't certain elements based on the record before me that can be met. So assuming whatever the plaintiffs say is true, assuming that they could even prove that at a PI hearing, we don't need to get there. And that's what the case's support is completely within the judge's discretion. And we've cited two cases that go directly to this point. The first is waste management, and the second is Northrop. Both of those cases, the court said, we don't need to get to a PI hearing, a full-blown hearing in this case. That will be a waste of time. I can tell on the record before me that there is no basis for a preliminary injunction. And even in waste management, the court said, I've reviewed the affidavits and allegations and exhibits, and nothing warrants a hearing. I just don't think that a preliminary injunction hearing, the hearing is going to accomplish anything. That's exactly what the trial court did in this case. In fact, the cases at the plaintiff's site support our position as well, particularly the Moss, M-A-A-S, versus Cohen Associates, and the Moss, McDonnell versus Moss case. In the Moss case particularly, the court actually struck a PI before a hearing. That's not disputed. What it sounds like they're trying to say is that she just didn't really get to the elements. She didn't make a decision. Well, she did do it for efficiency purposes, but she also did operate under those circumstances, under those elements for a preliminary injunction. And one of the things she said very clearly, and you guys have all hit on it, is that the circumstances has changed. And that goes to the idea that you cannot restore the status or, I'm sorry, you cannot maintain the status quo from what existed at the time when this case was filed to the time when the PI was struck. And what the court was saying, and what's very appropriate here, is that the record did support that the patients had transferred. And it's not just a transfer on paper. It's a transfer to new IPAs. It's also a transfer to new primary care physicians. And I think what we're all scratching our head is what happens if this were to be remanded and a PI were to be issued. Well, what would happen is that we would have to bring all those patients back to perfect managed care, not just on paper, but physically people would be stripped away from the primary care physicians that they're seeing now. And that would completely, and as the court said, cause confusion and upheaval. Those were her words. That would be inappropriate under this preliminary context. Instead, what the judge appropriately said is, let's get to the merits on a final hearing instead of playing shuffleboard with these patients. So the judge certainly properly exercised her discretion in striking the motion for preliminary injunction when she found that the status quo couldn't be maintained. And the Potsdamer versus Jack Brown-Buick, one of the seminal cases on PIs in the Illinois Supreme Court, said exactly that. The Supreme Court said, how can we, in that case, restore the parties on a preliminary injunction? And what happened was that a party had contracted to buy a dealership. The dealership was a Buick dealership. GM blocked the deal. And the plaintiff moved for a preliminary injunction saying, court, please enter a preliminary injunction ordering that I be allowed to purchase the dealership. The court said, how can we do that? The dealership is now Buick, and it's off with someone else. We can't restore the parties to the status quo. That's exactly what we have here. We can't just go back to the beginning. We can't just reset magically. What we can do is go to a trial on the merits, and the plaintiffs can pursue their claim for damages. Related to that, the court also found that, again, operating under the standards for a preliminary injunction, that they could not show irreparable harm and that no emergency situation existed. And that's really simple. The law is very clear that it has to be an emergency situation. In our case, we had not just the TRO being denied. There was no appeal. The discovery was delayed. Eventually, the PI hearing that was set, because the court did grant them a preliminary injunction hearing, the plaintiffs abandoned that hearing because they couldn't get the discovery done by the point that that hearing came around. After that, and this is very important, they never requested a new hearing, not even to the date that we moved to strike the preliminary injunction motion. They never requested a new hearing. The court said, you can refile a preliminary injunction motion if you choose. Granted, there has to be better facts.  injunction motion that was filed. So the court appropriately found that there was no basis under both the irreparable harm standard and in changing the status quo. That is not abuse of discretion. And finally, as Justice Fitzgerald-Smith pointed out, the balancing of the equities. In this case, the paramount concern is the patients. And the judge knew that and considered that in balancing the equities on the preliminary injunction and said, I'm not going to move these patients back and forth. Under no circumstances is that something that I want to do in favor of effectively just putting them back and appeasing the plaintiff's concern for this. So all in all, the judge did not abuse its discretion. It has the authority to strike a preliminary injunction motion prior to a hearing. That's not even disputed by the plaintiffs. And in doing so, the court properly exercised its discretion both for balancing the equities and operating under the standards for a preliminary injunction. Thank you very much. Thank you. Thank you, Your Honors. There's a couple of things. It sounded to me like Counsel for Harmony was trying to suggest that the trial court denied that the preliminary injunction motion on the merits. And I think that's very clear that that didn't happen. There was no finding that there was no irreparable harm. There was no finding that there would be upheaval with the patients. That was discussed and we allayed that concern saying 13,000 at least of these patients are going to stay with their same doctors. It's a paper transaction. They send out a letter saying you're here or you're here. It doesn't affect the patients. So, yes, they are the primary concern. But that is not something that's going to be disrupted if we are granted the relief we seek. You're talking about these changing circumstances and the record that the judge made this decision on. First of all, it wasn't made on the merits. So it's not clear what record there was. But at the time that the decision was made, written discovery was still going on. Half the deposition had been taken. So it wasn't as if the court reviewed a full record and said, okay, now they don't meet the standards. That's not what happened. It was simply, well, we think, I think there's been some change in circumstances so let's go to trial. It wasn't as if there had been some significant change in the record or some record before the court that changed that made it necessary to deny this motion without a hearing. A preliminary injunction would give us our patience back and would give us a chance to restore our reputation, give us a chance to get a new contract without having this smear on our reputation. And we think that we were at least entitled to a chance to do that. And just to say, well, you know, we're too far along. There may have to be additional discovery. I think that's something that happens in every case. If there's a preliminary injunction, even if it's a week after the case is filed, you're going to have two hearings when you get to trial, too. But oftentimes, isn't that an exercise of discretion by the court, that there would be evidence that was presented that would be pertinent to the determinations? And, again, within the use of discretion standard, are you taking the position that the judge does not have that type of authority? No, I don't. The judge does have discretion, obviously. But what we're saying is you don't have the discretion to deny a preliminary injunction motion, but to simply strike the hearing. You talk about the waste management case. But if you strike the complaint for preliminary injunction, isn't there inherent in the authority of a trial judge to do that? Well, I think there has to be some reason to do it, other than to say, I don't want to hear this now. She can do it, but you don't think she did it for the right reason. They obviously have the discretion to decide anything, issue that comes before them, but not just say, I'm not going to decide the issue. And I think that that's the difference. And the judge did say that even if you go to trial, you still may be entitled to injunctive relief. And we're saying we need to get it sooner rather than later. And that's why we should have had the hearing, and that's why the court abused its discretion in not giving us the opportunity to have it. Thank you. Thank you. We will take it under advisement and get back to you directly. And I appreciate the briefing and the arguments by both sides.